## UNITED STATES v. FOSTER et al.

(District Court, N. D. Texas, at Fort Worth. February 6, 1926.)

1. **Criminal law** ☞242(8)—**Defendants who severed connection with fraudulent scheme before letters set out in indictment were mailed held entitled to discharge.**

Where, in prosecution for using mails to defraud, government admitted that certain defendants had severed their connection with scheme when letters set out in indictment were mailed, such defendants were entitled to be discharged in proceedings for their removal to another district for trial.

2. **Criminal law** ☞242(7)—**In removal proceedings, evidence held insufficient to overcome presumption of probable cause raised by indictment, charging use of mails to defraud.**

In proceedings to remove defendants to another district for trial, evidence *held* insufficient to overcome presumption of probable cause raised by indictment charging use of mails to defraud.

3. **Post office** ☞35—**Managing officers of corporation could not be convicted of using mails to defraud, if they did not participate therein, regardless of their negligence.**

Managing officers of oil company could not be convicted of using mails in sale of stock to

defraud, unless they consciously participated therein, regardless of how negligent they were in handling corporation's affairs.

4. **Criminal law** ☞242(7) — **In removal proceedings, defendants' evidence must rebut presumption of probable cause raised by indictment.**

In proceedings for removal of defendants to another district for trial under indictment found therein, defendants, to be entitled to discharge, must rebut presumption of probable cause raised by indictment.

Proceeding by the United States against James C. Foster, A. M. Beeman, and others for removal of defendants to the Southern district of California, and application by defendants for discharge in habeas corpus. Petition for removal denied as to defendant Beeman and another, and such defendants discharged. Order of removal granted as to defendant Foster and another.

H. L. Arterberry, of Los Angeles, Cal., and David McCaleb, of Fort Worth, Tex., for the United States.

Mack Taylor, of Fort Worth, Tex., for defendants Edgell, Foster, and More.

Thompson, Barwise & Wharton, of Fort Worth, Tex., for defendant Beeman.

HUTCHESON, District Judge. This is a hearing upon proceedings identical in their nature with those discussed in the case of United States v. Andrade III (D. C.) 10 F. (2d) 572; the defendants in this matter, however, being charged in the Southern district of California in a wholly different indictment and with reference to entirely different transactions.

The government in this case offered its indictment and no other evidence. The defendants offered evidence, which, if believed, entirely rebuts the prima facie case made by the indictment, and entitles the defendants to a discharge.

The law governing cases of this kind has been stated in the opinion in the Andrade Case, and it remains only to discuss its application to the case of the several defendants involved in this proceeding. These defendants are James C. Foster, Jr., A. C. More, A. M. Beeman, and G. P. Edgell.

[1] Of these defendants, A. M. Beeman and G. P. Edgell stand in like case upon a defense that before any of the letters set out in the indictment had been mailed they had severed their connection with the Jim Hogg Oil Company, and/or the alleged scheme and artifice to defraud.

Their contention upon this point is admitted by the government, and, in view of the fact that the prosecution in California de-

pends upon their connection with the scheme at the time the letters were mailed, it follows inevitably, not as a matter of defense in the nature of an alibi, but as a matter of failure of the government's proof of probable cause, that these defendants have not, and could not have, committed the offense in California of which they stand charged, and that they ought to be upon their application discharged from this proceeding, and it will be so ordered.

The other defendants, James C. Foster, Jr., and A. C. More stand in different case. Their position is that they have negatived in positive and direct terms that they made any of the representations relied upon by the government as fraudulent; that they knew that they were made; and that they were in any manner connected either actively or tacitly, with the making thereof. If their testimony has overcome the prima facies of the indictment, they should be discharged. If it has not, they should be held.

While the indictment charges fraud in many particulars, the fraud mainly relied on is that contained in the scheme of financing, wherein it was represented that there was no promotion stock; that no salaries or promotion fees of any kind would be paid by the Jim Hogg Oil Company to its officers, trustees or owners; that all of the persons interested in the financing of the company were partners, and in on the same basis.

[2] Specifically, the government relies upon these representations contained in much of the literature:

"There are several reasons why you should invest, and here are a few of them: The Jim Hogg Oil Company was organized by responsible, reliable, competent business men. There are no professional promoters among its officers or trustees. Not one cent of salary is being paid to any officer or trustee of the company. There is no promotion stock, no big commissions are being paid to agents or brokers. The money received by the company through its sale of shares is being used for legitimate expenses and development expenses only. Not one cent is going into the pockets of the promoters. We have already raised about all the money we will need in order to get our big 20,000-acre lease in Jim Hogg county to give a drilling test. We are paying cash as we go along. It is not our aim or policy to go on selling stock forever. We want our stock sales to keep pace with the development work. That is all."

It is undisputed that these representations were made and sent out, and that they were not true. That as a matter of fact a commission of 5 per cent. was paid to the Oil Operators' Trust on all of the stock sold in compensation to them for the use of a mailing list of their stockholders. Of this Oil Operators' Trust, which was in the process of being promoted about the same time the Jim Hogg Oil Company was, Foster was a trustee and officer, and Spoonts, now deceased, was an active promoter of both of the companies. That the drilling of the well cost a little over $100,000, while there was $200,000, worth of stock sold, of which $60,000 was paid to the promoters in equal parts, each of the promoters netting $7,500, under the following agreement:

"Agreement made this the 1st day of August, A. D. 1921, between the undersigned parties.

"Whereas each party is now, or has under existing agreement become, the owner of the number of shares of the capital stock of the Jim Hogg Oil Company set opposite his signature; and whereas certain provisions have been made for the sale of all the said shares, or some of them, in connection with an active campaign now being carried on by the management of the said company, for the sale of its treasury stock:

"Now, therefore, it is agreed between the parties hereto as follows:

"That all of the said shares shall be placed in a common pool, and that the sale shall be made from this pool for the joint account of all the said parties, and that the net proceeds of all such sales shall be prorated between the said parties in the proportion to which the number of shares set opposite their respective names bear to the total number of shares.

"It is further agreed that the proceeds from the sale of any of the said shares shall be chargeable with the actual cost of selling the same, and these costs shall be deducted from the joint account from time to time, before distribution of these proceeds is made, as herein provided.

"It is further agreed and understood that a sale of these shares is to be effected as early as possible after sufficient of the treasury stock has been sold to guarantee the completion of a well, and at such earlier times as, in the opinion of the management of said company, such sales may be effected without undue hardship upon the interests of said company.

"In witness whereof we, the undersigned, have set our hands and seals hereto on this date above written. [Signed] Devore &

Latimer, by J. R. Latimer, No. of Shares 10,000. A. C. More, No. of Shares 10,000. A. M. Beeman, No. of Shares 10,000. Marshall Spoonts, No. of Shares 10,000. G. P. Edgell, No. of Shares 10,000. F. L. Moorman, No. of Shares 10,000. James C. Foster, Jr., No. of Shares 10,000."

The defendants do not deny the making of the contract, nor that misrepresentations were made in the literature in regard to financing. Their defense is that they assumed that the money would be honestly raised, upon true representations that they did not see any of the literature before it was sent out nor, in fact, before this investigation; that they at no time authorized or knew of the making of any of the representations which the government charges them with; and that, since the gist of the offense is a conscious intent to deceive, they could not be criminally guilty.

More, while admitting that he was a trustee and president, and that all of the literature went out in his name, emphatically declares that he knew nothing of the sending of it; did not authorize it; did not approve it; and that his interest in and connection with the matter was that of a geologist in the field; that he had confidence in his associates, and assumed that they would obtain the money honestly.

Foster's position is that he was a manager without salary in the Jim Hogg Oil Company; that his work was altogether in connection with the physical operation; that he knew nothing about the representations made, nor how they were to get the money; and that he assumed that all the representations would be true and honest upon which the money was obtained.

[3, 4] Of course, if the statements of these defendants are to be believed, they should be acquitted, as, however careless and negligent they might have been in handling the affairs of the company, they could not be guilty of the fraud charged without a conscious participation in it. But whether this testimony would be sufficient to raise a reasonable doubt in the minds of a jury so as to secure them an acquittal is not the question before me.

That question, as I have fully shown in the opinion in the Andrade Case, is whether the evidence of the defendants in the light of all the facts and circumstances is of such a clear and convincing nature as that it rebuts the presumption of probable cause raised by the indictment against them, and upon that question I am constrained to find that the evidence is not sufficient to sustain the burden put upon them. For while they may have been as little concerned in the matter and manner of raising of the money which they received as they say, it does not sound reasonable that persons who look to obtain from a stock selling campaign the sum of $7,500 each would be as little interested in or concerned with the methods used to get that money as these defendants say they were.

I therefore reach the conclusion, not that the defendants Foster and More are guilty beyond a reasonable doubt, but that they have clearly failed to overthrow the presumption of probable cause raised by the indictment.

Let an order be entered as to Beeman and Edgell refusing the government's petition for removal and discharging them on their petition for habeas corpus; and as to More and Foster, directing their removal to the Southern district of California, unless they enter into proper recognizance for their appearance in said district.